UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE ALTURA LEVY, et al.,<br>Plaintiffs,<br>v.<br>MARCO A. RUBIO, SECRETARY OF STATE,<br>Defendant. | No. CV 25-3598 PA (PDx)<br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Plaintiffs Apple Altura Levy ("Levy") and Paskinell Tijares Altura ("Altura") (jointly "Plaintiffs") seek declarations of United States citizenship under 8 U.S.C. § 1503(a), claiming birth in Easley, South Carolina. Following the June 2, 2026 bench trial and consideration of the parties' submissions, the Court makes the following findings and conclusions under Federal Rule of Civil Procedure 52(a). The Court finds for Defendant as to each Plaintiff, including independently under the clear-and-convincing-evidence standard.

## I. Evidentiary Rulings and Scope of Decision

1. Trial Exhibits 1-22 were admitted by stipulation. Admission establishes that the Court may consider the documents; it does not establish the truth of every entry or resolve competing accounts of birthplace. (Trial Tr. 5:15-6:16.) The South Carolina Family

Court orders are Trial Exhibits 2 and 6. References below to the Levy Order and Altura Order use their printed page numbers.

2. Consistent with the original proposed rulings, Defendant's objection to Levy Declaration paragraph 7 is sustained. The objections to Levy Declaration paragraphs 10 and 16 and Altura Declaration paragraphs 10 and 17 are overruled. The Court considers those accounts of parental statements, but finds them unpersuasive for the reasons discussed below. Agreed deletions identified in the parties' joint statement remain effective; the Court does not reinstate stricken testimony. The Court adheres to its rulings sustaining objections during trial. (Trial Tr. 7:1-15, 27:1-8, 29:14-18, 30:3-19, 31:8-24, 32:2-7, 32:19-21.)

3. Exhibit 23, used during Altura's cross-examination, was marked for identification, but the transcript does not reflect its admission. The Court relies on Altura's answers acknowledging his prior school-history statements for impeachment, rather than treating that exhibit as independent substantive proof. It does not find that the military certification was made under penalty of perjury. (Trial Tr. 48:6-50:8, 59:15-18.)

## II. Findings of Fact

### A. Levy

1. Levy was born on June 8, 1977. She and Altura are siblings, and their parents are Edwin Sanchez Altura and Emma Cebu Tijares. (Trial Tr. 11:17-18; Levy Decl. ¶ 2; Altura Decl. ¶ 4.)

2. The Philippine birth record associated with Levy identifies the Philippines as her birthplace. She acknowledged that entry. When counsel asked about a June 11, 1977 date on the document, she responded that she could hardly read it. The Court gives weight to the entry identifying a foreign birthplace, but does not treat counsel's question as an admission of the exact date when the birth was first officially recorded. (Trial Ex. 12; Trial Tr. 11:5–12:3.)

3. Levy acknowledged issuance of a Philippine passport identifying Philippine birth, her signature on that passport and a related document, and her use of the passport to travel alone between the Philippines and the United States in 1995. Nonimmigrant-visa

records issued in her name in 1996 and printed in 1997 likewise identify Philippine birth. She had no United States passport at that time. The significance is the repeated birthplace representation and actual use of the documents, rather than Philippine nationality alone. (Trial Tr. 12:4-14:8; Trial Ex. 13.)

4. In 2007, Levy signed a United States passport application under penalty of perjury identifying Guam as her birthplace and both parents as Hawaiian-born United States citizens. In 2019, she signed another application identifying South Carolina as her birthplace and her parents as Philippine-born noncitizens. (Trial Exs. 10-11; Trial Tr. 14:9-16:4.)

5. Levy testified that she had believed she was born in Guam until 2010. But her deposition testimony, read at trial without objection, was that she had always believed both parents were born in the Philippines. The Court does not credit her explanation that reliance on her parents satisfactorily accounts for the contrary parental-birthplace representations in her sworn 2007 application. This conflict materially undermines her portrayal of unquestioning, innocent reliance on family information. (Trial Tr. 22:17-23:25, 24:9-25.)

6. Levy denied personally applying for Philippine travel documents, but separately acknowledged signing and using the passport. The Court distinguishes preparation of an application from signing or using a resulting document. Nevertheless, her effort to attribute responsibility entirely to her parents does not credibly reconcile her own conduct and inconsistent representations. The Court does not credit her testimony that she was born in South Carolina. (Trial Tr. 12:9-24, 27:9-22.)

**B. Altura**

7. Altura was born on September 22, 1980. He acknowledged a Philippine birth certificate bearing a September 1980 date and Philippine passports listing Philippine birth. Records described in his testimony identify Philippine passports issued in 1987, 1996, and 2001. The Court considers the date shown on the birth certificate but does not assume that this date establishes when the birth was first officially recorded. (Trial Exs. 18, 20; Trial Tr. 35:5–24, 38:19–39:9.)

8. Altura used a Philippine passport to travel between the Philippines and United States around 1997 and to enter the United States around 2003. He acknowledged nonimmigrant visas issued in his name in 1996 and 2002 identifying Philippine birth. The 2002 application contains his photograph, Philippine-college information, and entries identifying his siblings' residence as the Philippines. Because he disputed the signature, the Court does not find from the questioning alone that he signed or personally supplied every entry. (Trial Exs. 19-20; Trial Tr. 35:25-39:15.)

9. In 2004, Altura signed a United States passport application under penalty of perjury identifying Hawaii as his birthplace and his parents as Hawaiian-born United States citizens, submitting a Hawaiian birth certificate. In 2019, he signed an application identifying South Carolina as his birthplace and his parents as Philippine-born noncitizens. He testified that he had believed the Hawaii account until approximately 2010. (Trial Exs. 15, 17; Trial Tr. 39:16-41:11, 43:22-44:22.)

10. Altura testified that he graduated from high school in the Philippines and attended college there for two years. On cross-examination, he acknowledged that a military processing record asking for all high schools and colleges listed only Chatsworth High School in California, indicated graduation, and bore his certification of completeness and accuracy. This material discrepancy diminishes his credibility. (Trial Tr. 46:25-50:8.)

11. The Court does not credit Altura's explanation that the conflicting official histories can be satisfactorily attributed to his parents or that he was born in South Carolina. His military-history inconsistency concerns information within his own knowledge. His acknowledged use of Philippine travel documents and successive incompatible sworn applications further undermine his reliability.

**C. The South Carolina Family Court Adjudications**

12. In 2018, the South Carolina Family Court considered separate petitions under S.C. Code Ann. § 44-63-100 after the state agency declined administrative registration for insufficient documentation. Both orders found the administrative denial reasonable, but ultimately directed issuance of delayed certificates identifying Easley, South Carolina as the

place of birth. Both expressly credited the respective Plaintiff's testimony. The Court recognizes that these adjudications were judicial determinations after hearings, not merely administrative registrations or unexamined applications. (Levy Order 1, 3-5; Altura Order 1, 4-6.)

13. Both orders identified the immunization evidence as the best link to South Carolina near birth: August 6, 1977 for Levy and November 23, 1980 for Altura, approximately two months after their respective birth dates. Both also relied on later Pickens County school attendance and 1980 census information identifying one Filipino male in a tract including the family's asserted address. Both took judicial notice of California petitions and accompanying family declarations. (Levy Order 2-5 & n.2; Altura Order 2, 4-6 & n.2.)

14. The Levy Order questioned the Philippine certificate because no supporting documents validated it. The Altura Order went further and characterized the Philippine certificate as a sham. Yet the orders also identify an affidavit reporting destruction of pre-2009 Philippine hospital records in a typhoon. The loss of those underlying records supplies an explanation for their unavailability; it does not affirmatively establish that the civil birth entries were false. The Court therefore does not adopt the inference that absence of hospital corroboration invalidates the Philippine certificates. (Levy Order 2-4; Altura Order 3-5.)

15. Proof that Guam or Hawaiian records were false does not establish South Carolina birth by elimination. Philippine birth remains a distinct possibility supported by affirmative records. The later South Carolina records must be assessed on their own evidentiary foundation rather than treated as validated merely because other asserted United States birthplaces were disproved.

16. The Altura Order relied additionally on a 2014 Philippine Emigration Clearance Certificate identifying United States citizenship. That entry reflects recognition of a claimed status decades after birth. The order identifies no independent investigation of the circumstances of his birth underlying that entry. The Court assigns it limited

corroborative weight and does not regard it as an independent determination of United States citizenship. (Altura Order 3, 5.)

17. The orders' exhibit descriptions and reasoning do not address the complete visa history or the contradictory sworn parental-birthplace entries in the United States passport applications. Altura acknowledged the omissions concerning his visas, three Philippine passports, and 2004 application. Levy acknowledged that the visas and application were not listed on the page shown to her, although she believed the visas had been submitted. The Court does not infer that every omitted fact was unknown to the state court judge. It finds that the orders do not resolve the material conflicts developed at this trial. (Levy Order 3-4; Altura Order 3-5; Trial Tr. 16:21-17:18, 42:2-43:11.)

18. Having independently heard Plaintiffs and considered those conflicts, the Court reaches different credibility findings. The South Carolina credibility determinations are weighed as part of the contrary evidence; they do not replace this Court's assessment of the witnesses and record in this action. The orders and resulting certificates substantially repeat the underlying family account and circumstantial evidence, rather than supply independent observations of either birth.

**D. Immunizations, Schooling, and Census Evidence**

19. Plaintiffs' immunization certificates bear January 22, 1988 dates; the personal records were obtained in 2011. The latter warn against use as documentary proof of citizenship or nationality. Those facts do not make the records irrelevant or prove that the historical entries are false. The provider/facility field identifies Anderson County Health Department, and the historical dates provide some support for an infancy connection to South Carolina. (Trial Tr. 19:7-20:23, 28:21-29:13, 45:1-18, 54:11-55:1.)

20. Neither Plaintiff has personal knowledge of the original recording of infant vaccinations. No testimony from a records custodian or treating provider established that the facility field necessarily identifies where every historical vaccination was administered, rather than where information was maintained or entered. The Court does not find, by speculation, that Plaintiffs' parents supplied the entries. More fundamentally, even

accepting that the vaccinations were administered in South Carolina on the recited dates, their administration approximately two months after birth establishes presence then, not the place of birth. The Court gives this favorable inference weight in the ultimate findings below.

21. The erroneous 1973 vaccination entry in brother Lewis's record counsels caution about historical entries but does not establish an error in either Plaintiff's own record. The Court does not disregard Plaintiffs' records on that basis. (Trial Tr. 20:24-21:8.)

22. The available school records establish later childhood schooling. Levy's records begin with fourth-grade information and list Philippine birth; Altura's include 1987-1988 and list Guam. Neither record identifies South Carolina as the birthplace. The Court credits childhood residence there, including the witnesses' memories, while recognizing that residence years after birth is compatible with foreign birth. Unavailable earlier school records are not treated as proof that earlier attendance did not occur. (Trial Tr. 21:9-22:7, 32:8-33:15, 45:19-46:24, 55:10-56:11.)

23. The census information described in the orders does not identify either Plaintiff as the person counted, establish the presence of either Plaintiff's mother at delivery, or record either birth. For Levy it postdates birth; for Altura the description supplies no observation of a September 1980 delivery. It adds limited evidence of a family connection to the area, not persuasive proof of Plaintiffs' birthplace. (Levy Order 2, 4; Altura Order 2, 6.)

**E. Comparative Weight and Ultimate Findings**

24. The Court preserves its adverse credibility findings as to each Plaintiff. It does not find that they first asserted any United States birthplace only in 2010; their accounts were that they previously believed Guam or Hawaii and changed to South Carolina around 2010. It does not infer knowing fraud merely from adulthood or use of an inaccurate document. The adverse findings rest on the concrete inconsistencies and unpersuasive explanations identified above.

25. The Philippine birth records are affirmative evidence of foreign birth. Their consistency with the Philippine passports actually used by Plaintiffs, visa records, and Levy's South Carolina school birthplace entry gives them greater persuasive force than the later reconstructed South Carolina account. The Court recognizes that later documents may repeat a common family source and does not count each as an independent eyewitness account. Even with that limitation, the established documentary history and actual conduct corroborate foreign birth and undermine Plaintiffs' explanation that every Philippine birthplace entry was fictitious.

26. The Court finds that Levy was born in the Philippines and was not born in South Carolina, Guam, or elsewhere in the United States. The Philippine birth record, her acknowledged signed and used Philippine passport, visa history, and Philippine birthplace entry in her South Carolina school record provide the affirmative basis for that finding. Her inconsistent sworn application and unpersuasive explanation diminish the competing account. The Court reaches a firm conviction that foreign birth is highly probable after giving favorable weight to the infant-vaccination inference, state adjudication, delayed South Carolina birth certificate, and claimed prior United States passport issuance.

27. The Court separately finds that Altura was born in the Philippines and was not born in South Carolina, Hawaii, or elsewhere in the United States. His Philippine birth record, the passport history he acknowledged, his actual use of Philippine passports, and the visa records provide the affirmative basis. His inconsistent sworn applications and school-history certification undermine the competing explanation. The Court reaches a firm conviction that foreign birth is highly probable even crediting the favorable infancy inference, state adjudication, delayed South Carolina birth certificate, Emigration Clearance Certificate, military service, and claimed prior United States passport issuance.

28. The absence of evidence documenting either Plaintiff's first journey to the United States has been considered. The Court does not require Plaintiffs to fill that gap or assume an unproved route or date of entry. It finds that the affirmative foreign-birth evidence is persuasive notwithstanding the gap. Childhood presence and even presence

approximately two months after birth are compatible with the foreign-birth findings; the Court's conclusion rests on the comparative documentary proof, not an affirmative finding of a particular infant journey.

29. These findings are not merely that Plaintiffs failed to persuade the Court, nor an inference of foreign birth from disbelief alone. The Court finds the affirmative foreign-birth evidence clear and convincing as to each Plaintiff after weighing the contrary evidence. It necessarily also finds foreign birth more likely than not. Their parents' Philippine nationality, later foreign schooling, and foreign nationality alone would not establish these conclusions and are not treated as doing so.

## III. Conclusions of Law

1. Section 1503(a) provides the asserted remedy for denial of a right or privilege on the ground of nonnationality. The Court determines nationality independently rather than reviewing the Department's factual conclusion deferentially. Richards v. Secretary of State, Department of State, 752 F.2d 1413, 1417 (9th Cir. 1985). The citizenship theory tried is birth in the United States under the Fourteenth Amendment and 8 U.S.C. § 1401(a).

2. The ordinary preponderance rule reflected in Young Ah Chor v. Dulles, 270 F.2d 338, 340-41 (9th Cir. 1959), must be applied consistently with later authority concerning substantial credible evidence of citizenship. Under Moncada v. Rubio, 153 F.4th 733, 745-46 (9th Cir. 2025), such evidence shifts the burden to the government to establish noncitizenship by clear and convincing evidence. See also Mondaca-Vega v. Lynch, 808 F.3d 413, 419-22 (9th Cir. 2015) (en banc).

3. Moncada involved undisputed New York birth and a disputed diplomatic-immunity exception. Here the occurrence of United States birth itself is disputed. That factual distinction makes Moncada's immunity analysis inapplicable; it does not eliminate its burden rule for passport cases. The Court therefore does not distinguish Moncada simply because this case concerns birthplace.

4. The South Carolina Family Court orders and delayed certificates, considered with the evidence underlying them and the material conflicts developed at trial, do not

themselves supply substantial credible proof of either Plaintiff's claimed United States birth. They establish that state registration was judicially directed. Their ultimate birthplace determinations depend on circumstantial evidence that the Court finds insufficiently persuasive and testimony that this Court does not credit. This is a finding specific to these records. The higher-standard holding supplies an independent basis for judgment regardless of whether the Court correctly decided the threshold issue concerning the evidence offered to establish that Plaintiffs were born in South Carolina.

5. A judicial order establishing a delayed birth record is not invariably conclusive in a later citizenship action. Mah Toi v. Brownell, 219 F.2d 642, 643-44 (9th Cir. 1955). That decision addressed California law and does not determine every effect of these South Carolina orders. Here, S.C. Code Ann. § 44-63-100 authorizes establishment of a birth record and requires description of the evidence; it does not direct issuance of a federal passport or confer United States citizenship. Plaintiffs have disclaimed formal preclusion. The Court gives the orders their evidentiary weight, recognizes their operative direction to the state registrar, and independently determines the federal claim. Even affording the resulting certificates a rebuttable presumption of accurate birthplace, the Court finds it overcome by the evidence identified above.

6. The passport issue is distinct. Moncada treats evidence of a valid United States passport as substantial credible citizenship evidence and applied the shifted burden despite subsequent revocation. The Court does not use revocation alone, or the earlier false Guam and Hawaiian records alone, to deny evidentiary effect to asserted later passports. For the independent alternative holding, the Court assumes in each Plaintiff's favor that the claimed prior passport issuance and the entire citizenship showing satisfy the threshold. Defendant therefore bears the clear-and-convincing burden in that holding.

7. Applying that allocation, Defendant has established by clear and convincing evidence that each Plaintiff was born in the Philippines and did not acquire citizenship through the United States birth asserted here. The Court adopts Findings 26–29 under that heightened standard. This determination accounts for the strongest reasonable inference

from the infant vaccinations and gives weight to the prior state adjudications and passport recognition. The finding is an affirmative determination of highly probable foreign birth, not merely that Plaintiffs' evidence is less convincing or that the evidence is evenly balanced.

8. Independently, to the extent the ordinary preponderance framework governs, neither Plaintiff has proved United States birth by a preponderance of the evidence, and Defendant's foreign-birth showing outweighs the evidence supporting domestic birth. The defense judgment therefore follows under that standard as well. The higher-standard holding supplies an independent basis for judgment regardless of whether the Court correctly decided the threshold issue concerning the evidence offered to establish that Plaintiffs were born in South Carolina.

9. The Court does not find that Philippine citizenship or use of a Philippine passport extinguished previously acquired United States citizenship. It finds that the United States birth on which these claims depend did not occur. No alternative acquisition of United States citizenship was established.

10. Plaintiffs' requests for declarations of United States citizenship under 8 U.S.C. § 1503(a) are denied. Judgment shall be entered for Defendant and against each Plaintiff. Defendant is the prevailing party; allowable costs shall be determined under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 2412(a)(1).

IT IS SO ORDERED.

DATED: October 28, 2026

Percy Anderson
UNITED STATES DISTRICT JUDGE